UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME PROPERTY & CASUALTY
INSURANCE INC.,

Plaintiff,

v.

NAVIGATION GLOBAL LLC, et al.,

Defendants.

Case No. 1:25-cv-764

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Plaintiff Prime Property & Casualty Insurance Inc. brings this action for declaratory judgment against Navigation Global LLC and Robert Joseph. Prime seeks a declaration that it has and had no duty to defend or indemnify Navigation Global or Joseph in the lawsuit titled *John Childers v. Joseph Robert (sic.)* that was filed in the Muskegon County Circuit Court ("Childers Lawsuit"). Navigation Global and Joseph failed to respond to Prime's complaint, and the Clerk of Court entered a default against them on February 24, 2026 (ECF No. 30). Prime now moves for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure (ECF No. 34). For the reasons explained below, the Court will grant the motion.

## I. BACKGROUND

The complaint in the Childers Lawsuit concerns an automobile accident that occurred on December 6, 2022, in Norton Shores, Michigan, involving John Childers, III, and Joseph. (Childers Compl. ¶ 4, ECF No. 1-2.) Joseph, an employee of Navigation Global, was allegedly driving a tractor-trailer truck owned by Navigation Global when he collided with Childers's vehicle. (*Id.* ¶¶ 9, 10, 16.) Childers claimed that Joseph was responsible for the accident because

he negligently failed to yield when turning left at an intersection. (*Id.* ¶ 9.) And Childers claimed that Navigation Global was liable because it was the owner of the vehicle.

According to Prime, it issued a commercial automobile insurance policy to Navigation Global covering the time period when the accident occurred. (Compl. ¶ 17, ECF No. 1.) After Childers sued Navigation Global and Joseph, Prime retained an attorney to defend them. (*Id.* ¶ 15.) Joseph did not cooperate in the defense of the lawsuit. (*Id.* ¶ 27.) Prime asserts that it settled the claims against Joseph and Navigation Global in the Childers Lawsuit. (Mem. in Supp. of Mot. for Default J. 8, ECF No. 35.) Prime brought this action to obtain a declaration that it had no duty to defend or indemnify Childers or Navigation Global in the Childers Lawsuit. In particular, Prime alleges that the policy did not provide coverage because Joseph was not a "Scheduled Driver" as required by the policy. (Compl. ¶ 3.) In addition, Joseph breached the policy by not participating or cooperating in the defense of the lawsuit. (*Id.*)

## II. LEGAL STANDARD

Rule 55 governs the entry of default judgments. *See* Fed. R. Civ. P. 55. Before requesting a default judgment, the plaintiff must seek an entry of default from the clerk. *See* Fed. R. Civ. P. 55(a). Once a default has been entered by the clerk, a default judgment can be entered by either the clerk or the Court. The clerk must enter default judgment upon the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation" and the defendant is a legally competent adult who has been defaulted for failing to appear. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for default judgment. *See* Fed. R. Civ. P. 55(b)(2); *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013).

In ruling on a motion for default judgment under Rule 55(b)(2), the Court considers the following factors: "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts;

6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002). "Default judgment on a particular claim can stand only if there was a sufficient basis in the pleadings for the judgment entered." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022) (internal quotation marks omitted). In determining whether default judgment is warranted, the Court accepts the factual allegations in the complaint as true, except as it relates to damages. *Id.* at 403.

## III. ANALYSIS

### A. Choice of Law

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Thus, this Court applies Michigan's choice-of-law principles.

In an action to determine insurance benefits, a Michigan court applies the choice-of-law rules that govern a contract action. *Farm Bureau Ins. Co. v. Abalos*, 742 N.W.2d 624, 626 (Mich. Ct. App. 2007). Where, as here, there is no choice-of-law provision in the insurance policy, the Court must "balance the expectations of the contracting parties and the interests of Michigan and [other possible states] to determine which law to apply." *Id.* Navigation Global is located in Illinois. (Compl. ¶ 5.) Prime's principal place of business is in Utah. (*Id.* ¶ 4.) Joseph is located in Florida. (*Id.* ¶ 6.) Childers is located in Michigan. (*Id.* ¶ 7.) The Childers Lawsuit was filed in Michigan and the accident occurred in Michigan.

Illinois has a significant interest over the matter because the insurance policy was issued to an Illinois company. Also, the policy contains several provisions indicating that it is subject to Illinois law. Indeed, the overall coverage provided is identified as "Commercial Auto Liability – IL." (Policy Declarations, ECF No. 1-1, PageID.14.) Also, a "changes endorsement" indicates

that the policy is intended to comply with "the requirements of the Illinois Safety and Family Financial Responsibility Law." (Illinois Changes Endorsement, ECF No. 1-1, PageID.40.) Similarly, a "cancellation and nonrenewal changes endorsement" states that the insurer can cancel coverage if continuing coverage would put the insurer in violation of Illinois law. (Illinois Cancellation and Nonrenewal Changes Endorsement, ECF No. 1-1. PageID.43.) And an uninsured motorists endorsement provides that any provision that conflicts with Illinois law "is hereby amended to conform to such law." (Illinois Uninsured Motorists Coverage Endorsement, ECF No. 1-1, PageID.52.) Thus, the contracting parties clearly expected that Illinois law would apply to the policy. The only connections to Michigan are the site of the vehicle accident, the location of the injured party, and the location of the Childers Lawsuit. But the location of an automobile accident, even an accident involving a Michigan driver, does not suffice to give Michigan a greater interest over an insurance contract dispute than the state where the policy was issued. *See Farm Bureau Ins.*, 742 N.W.2d at 627 (Michigan law applied to coverage dispute for Michigan insurance policy issued to a Michigan driver, even though the underlying accident occurred in Ohio and involved Ohio residents). Consequently, the Court will apply Illinois law.

**B. Merits**

Under Illinois law, "an insurer's duty to defend its insured is much broader than its duty to indemnify." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992) (citing *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 247 (Ill. 1982)). Therefore, "where no duty to defend exists, no duty to indemnify could ever exist." *Fremont Cas. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 739 N.E.2d 85, 89 (Ill. App. Ct. 2000) (citing *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993)). The question of whether an insurer has a duty to defend its insured against a lawsuit is answered by "comparing the allegations of that suit, liberally construed in favor of the insured, with the language of the

insurance policy." *Fremont Cas.*, 739 N.E.2d at 90. As a general rule, the insurer is obligated to defend its insured where the factual allegations of a complaint "fall within, or even potentially within, the scope of an insurance policy's coverage," "even if the allegations are groundless, false, or fraudulent." *Id.* (citing *Thornton v. Paul*, 384 N.E.2d 335, 339 (Ill. 1978)).

The policy provides that Prime's duty to defend extends to a lawsuit "covered by this Policy." (Commercial Auto Ins. Policy, PageID.16.) Conversely, Prime does not have a duty to defend a suit seeking damages "to which this insurance does not apply." (*Id.*)

The original version of the policy provided that Prime would pay covered damages so long as "[t]he Covered Auto is being used in the course and scope of [Navigation Global]'s Commercial Auto Operations at the time of the Accident; and the Covered Auto is being operated by a Permissive Driver at the time of the Accident." (Commercial Auto Ins. Policy, ECF No. 1-1, PageID.16.) An endorsement to the policy replaced the term "Permissive Driver" in that provision with the term "Scheduled Driver." (Illinois Scheduled Drivers Endorsement, ECF No. 1-1, PageID.45.) A Scheduled Driver is one "specifically identified in a Scheduled Drivers Endorsement." (*Id.*) The endorsement clarifies that coverage "no longer extends operation of a Covered Auto by a Permissive Driver"; "coverage is limited to situations in which a Covered Auto is being maintained, occupied or operated by a Schedule Driver in the course and scope of [Navigation Global's] Commercial Auto Operations." (*Id.*)

Prime alleges that Joseph was not a scheduled driver. (Compl. ¶ 4.) The Court must accept that allegation as true. Accordingly, the policy does not cover the accident involving Joseph. That means Prime did not have a duty to defend or indemnify Navigation Global or Joseph.

In addition, under Illinois law, any condition in an insurance policy requiring cooperation on the part of the insured is "one of great importance." *Waste Mgmt., Inc. v. Int'l Surplus Lines*

*Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991) (citing *Schneider v. Autoist Mut. Ins. Co.*, 178 N.E. 466 (Ill. 1931)). The purpose of such a cooperation clause "should be observed," and its purpose is to "protect the insurer's interests and to prevent collusion between the insured and the injured party." *Id.* (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809 (Ill. 1977); *Pittway Corp. v. Am. Motorists Ins. Co.*, 370 N.E.2d 1271 (Ill. Ct. App. 1997)).

The policy here provides that the "Named Insured and any other involved Insured" must:

> c. Cooperate with the Insurer in the investigation, settlement, or defense of a Claim or Suit. The Insurer may require an Insured to submit to an examination or questioning, attend hearings, depositions, and trials. Additionally, in the course of investigation or defense, the Insurer may require written and/or sworn statements concerning a Claim; and
>
> d. Assist the Insurer in the enforcement of any right against any person or organization which may be liable to an Insured, or which provides similar benefits to an Insured because of injury or damage to which this Policy may also apply.

(Commercial Auto Ins. Policy, PageID.29.)

Prime alleges that Joseph did not cooperate in the defense of the Childers Lawsuit despite attempts by Prime to contact him for his cooperation and participation. (Compl. ¶ 29.) The Court accepts that allegation as true. Since Joseph failed to cooperate, Prime was "excused" from its duty to defend him. *See Emps. Reinsurance Corp. v. E. Miller Ins. Agency, Inc.*, 773 N.E.2d 707, 718 (Ill. App. Ct. 2002).

The insurance policy also includes an MCS-90 endorsement that expands the scope of Prime's coverage obligations in accordance with federal law. It requires the insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operations, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 309 of the Motor Carrier Act of 1980." (MCS-90 Endorsement, ECF No. 1-1, PageID.57.) But the insured must reimburse Prime for any payments made for suits

or claims the insurer "would not have been obligated to make under the provisions of the policy except for the agreement in this endorsement." (*Id.*) In other words, the endorsement creates a payment obligation for a final judgment (up to specified limits), but not a true indemnity or a duty to defend.

**C. Default Judgment Factors**

The *Russell* factors tilt in Prime's favor as the claim appears meritorious under Illinois law, the complaint is sufficient, and there is no reason to think that the defendant's default was due to excusable neglect. There is also no reason to think that there are material facts in dispute. Thus, a default judgment is warranted.

**D. Declaratory Relief**

The relief that Prime seeks—a declaratory judgment—is discretionary, and the Court determines whether it is appropriate by considering the *Grand Trunk* factors, *see Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court looks to

> (1) Whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for res judicata;
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; . . .
>
> (5) whether there is an alternative remedy which is better or more effective.

*W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (internal quotation marks omitted).

Here, the factors counsel in favor of entering a declaratory judgment. A declaration would settle the controversy and clarify the legal relations between the parties without creating friction

with state courts. Further, there is no evidence of procedural fencing here, and no better alternative remedy is apparent. Thus, a declaratory judgment is warranted.

## IV. CONCLUSION

For the reasons herein, the Court will grant the motion for default judgment and issue a judgment declaring that Prime had no duty to defend or indemnify Navigation Global or Joseph. And because Prime had no such duties, Prime is entitled to reimbursement from Navigation Global and/or Joseph for the costs associated with the defense and settlement of the Childers Lawsuit. The policy expressly requires the insured to reimburse Prime for the expenses it paid in relation to a claim (including expenses for the defense of a claim) that is determined to not be covered by the policy. (Commercial Auto Ins. Policy, PageID.17, 35.) A separate order and judgment will issue.

Dated: August 18, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE